# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLENE RAINEY,<br>    *Plaintiff*,<br><br>    v.<br><br>STATE OF CONNECTICUT<br>DEPARTMENT OF SOCIAL SERVICES,<br>    *Defendant*. | No. 3:17-cv-1222 (VAB) |

## RULING AND ORDER ON MOTION TO DISMISS

Charlene Rainey ("Plaintiff"), proceeding *pro se*, filed a lawsuit against the Connecticut Department of Social Services ("Defendant" or "the Department of Social Services" or "the Department"), alleging claims for illegal race discrimination and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, and for violation of her civil rights under 42 U.S.C. § 1983. *See* Amended Complaint, dated Sept. 28, 2017 ("Am. Compl."), ECF No. 15. The Department of Social Services has moved to dismiss, claiming that Ms. Rainey failed to exhaust her administrative remedies before filing this lawsuit and failed to state a claim for which relief can be granted.

For the following reasons, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

The motion to dismiss is granted as to Ms. Rainey's claim for damages under Section 1983 because of the Department of Social Services's sovereign immunity under the Eleventh Amendment. The motion to dismiss is denied as to all of Ms. Rainey's other claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Ms. Rainey, an African-American woman, works as an Accounts Examiner at the Connecticut Department of Social Services. Am. Compl. ¶¶ 1–2. She alleges that approximately fifteen people work in her position, and the "vast majority are white." *Id.* ¶ 3.

Ms. Rainey alleges that, on or about August 18, 2015, she filed a complaint against a co-worker, Susan Mangifico, alleging workplace violence. *Id.* ¶ 4. She claims that, since filing that complaint, she has "been the subject of discrimination and retaliation by [her] employer." *Id.* ¶ 5. She alleges that both she and Ms. Mangifico were moved, Ms. Rainey "next to another employee who was known by management to be a severe problem employee," and Ms. Mangifico to "an area where there were no problems[.]" *Id.* ¶ 5(a). She also alleges that, before filing the complaint, her evaluations were very good, but that, after filing the complaint, her evaluation in September 2016, "was down-graded," and she was "written up for taking off sick time that was unpaid, which [she] had done in the past without incident." *Id.* ¶ 5(b).

Ms. Rainey also alleges that, before filing the complaint, she performed audits of dental offices. *Id.* ¶ 5(c). She alleges that, even though she had failed the Associate Accounts Examiner test, she was told that if she took and completed another exam her supervisor would recommend her for a promotion. *Id.* She alleges that she completed the test, at her own cost of approximately $20,000. *Id.* Ms. Rainey claims that, when she "returned to work from a pregnancy, [she] was removed from [her] duties, and they were 'outsourced,'" and that now, she "log[s] in complaints." *Id.* She claims that, "[a]s a result, [her] changes for advancing within the Department have been drastically reduced, and the $20,000 [she] spent is wasted." *Id.*

Ms. Rainey alleges that she has been "called an 'animal' and a 'savage,'" which, she claims, was "reported in writing to supervisors, and to Human Resources as a complaint of

2

discrimination." *Id.* ¶ 5(d). She alleges that in response, "[n]ot only was nothing done, but [her] treatment worsened." *Id.*

Ms. Rainey alleges that she was "told in writing by [her] supervisor that if [she] wanted 'everything to stop', [she] should email the union that [she] did not wish to pursue this." *Id.* ¶ 5(e).

Ms. Rainey alleges that her former supervisor, Walter Pacyna, instructed her at the end of February 2016 that she "had to file a complaint with the Commission on Human Rights and Opportunities, or [she] would lose health benefits for [her] new child." *Id.* ¶ 6.

Ms. Rainey claims that "[t]his all has caused [her] emotional distress, and required [her] to seek medical treatment." *Id.* ¶ 7.

On April 24, 2017, the Equal Employment Opportunity Commission issued Ms. Rainey a right-to-sue letter. *Id.* ¶ 8; U.S. E.E.O.C. Dismissal and Notice of Rights, dated Apr. 24, 2017, annexed as Ex. 1 to Am. Compl., ECF No. 15-1 (adopting findings of state or local fair employment practices agency that investigated the charge).

**B.     Procedural History**

On July 21, 2017, Ms. Rainey filed a *pro se* Complaint against the Department of Social Services. Complaint, dated July 21, 2017 ("Compl."), ECF No. 1. The Court referred the case to Magistrate Judge Garfinkel, who reviewed Ms. Rainey's motion to proceed in forma pauperis, and found that the Complaint "appear[ed] to state as a cause of action an employment discrimination claim," but did not "sufficiently describe the facts which support this claim." Order, dated Aug. 3, 2017, ECF No. 14. Judge Garfinkel therefore instructed Ms. Rainey to file an amended complaint within 60 days of the Order. *Id.*

Ms. Rainey filed an Amended Complaint on September 28, 2017. Am. Compl., ECF No. 15. Judge Garfinkel granted her motion for leave to proceed in forma pauperis on October 11, 2017. Order, dated Oct. 11, 2017, ECF No. 16.

On January 29, 2018, the Department of Social Services filed a motion *nunc pro tunc* to dismiss the Amended Complaint. Motion *Nunc Pro Tunc* to Dismiss, dated Jan. 29, 2018 ("Mot."), ECF No. 26. The Department of Social Services then filed a motion to stay discovery until the Court rules on the motion to dismiss or until six months from the Order. Motion to Stay, dated Jan. 31, 2018, ECF No. 28. The Court granted the motion to stay discovery on February 21, 2018, Order, dated Feb. 21, 2018, ECF No. 31, and then held oral argument on the motion to dismiss on September 4, 2018, Minute Entry, dated Sept. 4, 2018, ECF No. 35.

## II. STANDARD OF REVIEW

First, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); FED. R. CIV. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.* In evaluating whether the plaintiff has established that the court has subject matter jurisdiction, "the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

Second, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a), and a court will dismiss any claim that fails "to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6). In reviewing a

4

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). And "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, a complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At this stage, a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views allegations in the light most favorable to the plaintiff, and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir.) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

In addition, *pro se* pleadings will be read "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). "Even in a pro se case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010); *Dolan v. Connolly*, 794 F.3d 290, 293 (2d Cir. 2015). Still, "when addressing a *pro se* complaint, a district 'court should not

5

dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

## III. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

"Under Title VII . . ., a plaintiff can sue in federal court only after filing timely charges with the EEOC." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (citing 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f)(1); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562–63 (2d Cir. 2006)). The complainant has 180 days from the adverse employment action to file charges with the EEOC. 42 U.S.C. § 2000e-5(e)(1). Then, "the complainant must await dismissal of the administrative charge (or a failure to act)[.]" *McPherson*, 457 F.3d at 214. Once the complainant receives a "right-to-sue" letter from the EEOC, the person may bring the case in this Court. 42 U.S.C. § 2000e-5(f)(1); *see also McPherson*, 457 F.3d at 214 ("Such notification is called a 'right-to-sue' letter because the notification is a prerequisite to suit (even though the notification does not indicate that *all* of the statutory prerequisites for suit have been met, and therefore does not bespeak a 'right').").

The Department of Social Services argues that Ms. Rainey has not exhausted her administrative remedies as to certain allegations and her lawsuit therefore must be dismissed by the Court. Defendant's Memorandum of Law in Support of Mot., dated Jan. 26, 2018 ("Def.'s Mem."), annexed to Mot., ECF No. 26-1, at 5–8. The Department of Social Services argues that Ms. Rainey "filed a complaint with the CHRO on March 7, 2016 merely alleging that she was warned, given a poor evaluation, harassed, retaliated against based on her race, color and sex." *Id.* at 6. The Department argues that paragraphs 5(b), 5(c), and 5(d) of the Amended Complaint

contain allegations that were never raised at the CHRO and were therefore unexhausted. Those paragraphs, in full, read as follows:

> b. Prior to me filing the complaint against the white co-worker, all my employee evaluations were very good. My last evaluation, in September of 2016, was down-graded, and I was written up for taking off sick time that was unpaid, which I had done in the past without incident.
>
> c. Prior to my filing the complaint, my job was to do of audits of dental offices. My supervisor told me that even though I had failed the Associate Accounts Examiner test, if I completed dental assistant training, he would recommend me for a promotion. I did this on my own, at a cost of approximately $20,000. On or about June 10, 2016, when I returned to work from a pregnancy, I was removed from my duties, and they were "outsourced." Now, I just log in complaints. As a result, my chances for advancing within the Department have been drastically reduced, and the $20,000 I spent is wasted.
>
> d. I have been called an "animal" and a "savage", and on December 5, 2015, this was reported in writing to supervisors, and to Human Resources as a complaint of discrimination. Not only was nothing done, but my treatment worsened.

Am. Compl. ¶¶ 5(b), 5(c), 5(d).

The Department of Social Services argues that Ms. Rainey's allegations that she was "downgraded" and that her duties were "outsourced" were never raised at the CHRO and therefore should be excluded from this Court's consideration. Def.'s Mem. at 6. The Department further argues that "the allegation that she was called an 'animal' or 'savage' on December 5, 2015 cannot be found in the CHRO Complaint, despite the fact that this allegedly occurred <u>before</u> she filed her CHRO complaint in March 2016." *Id.* at 7. Finally, the Department argues that Ms. Rainey's "failure first to have raised in her CHRO filing the precise claim of unlawful discrimination or retaliation which allegedly occurred on December 5, 2015, June 10, 2016 and September 2016, before bringing them to this Court, constitutes a fatal failure to satisfy a

7

necessary precondition to bringing suit: the receipt of a CHRO right-to-sue letter with respect to the claims actually raised; therefore, this Court must dismiss these claims." *Id.* at 7–8.

Ms. Rainey responds that the Department of Social Services engaged in a "continuing course of conduct," and "may be held liable for all acts that are part of this single claim." Plaintiff's Opposition to Mot., dated Feb. 9, 2018 ("Pl.'s Opp."), ECF No. 29, at 1–2. She argues that she need only "file a charge within 180 to 300 days of any act that is part of the hostile work environment." *Id.* at 2. She argues that the Department of Social Services's "latest act of discrimination, retaliation and a hostile work environment occurred on October 19, 2018 with the first act occurring in December 2015. *Id.* For a different reason, the Court agrees with Ms. Rainey.

In her CHRO complaint, filed on March 7, 2016, Ms. Rainey alleged that she is an African American, pregnant woman. *See* CHRO Affidavit of Illegal Discriminatory Practices, dated Mar. 7, 2016 ("CHRO Aff."), annexed as Ex. 1 to Am. Compl., ECF No. 15-1, at 5–8. She alleged that she "was employed by the Respondent on or about February 6, 2017 as an Accounting Career Trainee,"[1] and she was "promoted on or about February 2009 to permanent full-time Accounts Examiner," and that her "work performance was excellent throughout [her] employment." *Id.* ¶¶ 4–5. She further alleged that, in the wake of a series of incidents involving workplace harassment by her coworker, she was "warned, harassed, given a poor evaluation, experienced a hostile worker environment, retaliated against . . . and discriminated against in the terms and conditions of employment by the Respondent, due to my race, African American, my color, Black, my sex, female, my pregnancy, and having previously opposed and filed against discriminatory practices." *Id.* ¶ 16.

---

[1] Although the CHRO complaint states that Ms. Rainey was hired "on or about February 6, 2017," the Court assumes that 2017 is a typo, in light of all of the other dates listed in the administrative complaint, and that the correct date is February 6, 2007. *See* CHRO Aff. ¶ 5.

8

In federal court, "[t]he exhaustion requirement is relaxed under the 'reasonably related' doctrine if, *inter alia*, 'the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 149 (2d Cir. 2003)). Courts apply the same standard with respect to to CHRO investigations when the EEOC adopts the findings of that agency in issuing a right-to-sue letter. *See, e.g.*, *Hollis v. Dep't of Mental Health and Addictive Servs.*, No. 14 CV 516, 2015 WL 5328131, at *4 (D. Conn. Sept. 11, 2015) (Thompson, J.) (applying reasonably related standard to assess whether plaintiff's CHRO complaint failed to give adequate notice to CHRO and thus failed to exhaust administrative remedies); *Roundtree v. Securitas Sec. Servs.*, No. 10 CV 778, 2012 WL 631848, at *9 (D. Conn. Feb. 27, 2012) (Hall, J.) (same).

In analyzing whether claims are reasonably related to those in the agency complaint, "[t]he central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Williams v. N.Y.C. Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam) (quoting *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003)). "The 'reasonably related' exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." *Id.* (quoting *Deravin*, 335 F.3d at 201) (internal citations and quotation marks omitted).

The Department of Social Services claims that Ms. Rainey's Amended Complaint relies on a different theory of discrimination than that raised before the CHRO. *See* Def.'s Mem. at 7. But the Court fails to see what makes the allegations in the Amended Complaint so different that

9

they cannot be considered "reasonably related" under the relevant standard in the Second Circuit. This situation is in contrast to the Second Circuit's decision in *Mathirampuzha,* for example, where the plaintiff's EEO complaint neither stated nor implied repeated conduct, nor a retaliation claim, but merely alleged a single incident of aggression. *See Mathirampuzha*, 548 F.3d at 77–78 (finding plaintiff's claims were not reasonably related to EEO complaint and upholding their dismissal under exhaustion requirement).

As a result, the allegations alleged by Ms. Rainey all would have been reasonably expected to grow out of the CHRO complaint's allegations of workplace harassment, workplace violence, and discrimination that resulted in a poor evaluation, had the Commission or the EEOC undertaken their investigation. The Court therefore finds that Ms. Rainey's allegations are reasonably related to her CHRO complaint, and that her claims were properly exhausted. The Department of Social Services's motion to dismiss for failure to exhaust administrative remedies therefore is denied.

### B. Failure to Allege Adverse Employment Action or Retaliation

The Department of Social Services also argues that Ms. Rainey has not sufficiently pledan adverse employment action, an essential element of both her discrimination and retaliation claims. *See* Mot. at 8, 10. The Court disagrees.

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show (1) that she was a member of a protected class; (2) that she was qualified for the position; (3) that she was subject to an adverse employment action; and (4) that the adverse action occurred under circumstances that give rise to an inference of discrimination. *See Liebowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). The burden of establishing a *prima facie* case is minimal. *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) ("The burden of establishing a

10

prima facie case is not onerous, and has been frequently described as minimal.") (quoting *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998)).

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999)). Such a "change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.* (quoting *Crady*, 993 F.2d at 136).

The Department of Social Services argues that Ms. Rainey's allegations "do not establish 'a materially adverse change in the terms and conditions of her employment'" because she complains merely that "she was removed from her duties and they were outsourced and she 'just logs in complaints.'" Def.'s Mem. at 9. The Department argues that she "does not state that her salary was reduced or that she was demoted," and that her allegation that her duties were altered "does not rise to the required level to constitute an adverse employment action." *Id.* The Department does not specify, however, what that level is.

The Second Circuit has held that a change in duties may be an adverse employment action "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galabya*, 202 F.3d at 641 (citing *Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 364 (2d Cir. 1980). Under this standard, a worker could survive the pleading stage in alleging that his

11

employer "assigned him duties well below his civil service and functional titles and took away his access to the personnel management program, thereby rendering him unable to perform the sole task he had retained from his pre-2011 responsibilities." *Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018). In another case, the Second Circuit reversed a district court's decision to dismiss a plaintiff's allegations of a significant diminishment of material responsibilities where the employer "stripped her of virtually all of her secretarial duties" in retaliation for protected activity under Title VII. *Patane v. Clark*, 508 F.3d 106, 115–16 (2d Cir. 2007).

This Amended Complaint provides sufficiently detailed allegations for the Court to conclude that, at the pleading stage, Ms. Rainey has set forward enough facts to support her claim that she suffered an adverse employment action insofar as her material responsibilities were significantly diminished. According to Ms. Rainey, her job before filing an EEO complaint involved audits of dental offices; now, however, she says that she simply logs in complaints and that, as a result, her chances for advancing within her job have been drastically reduced.[2] *See* Am. Compl. ¶ 5(c). These allegations are sufficient to support a *prima facie* case under Title VII, particularly in light of the requirement that *pro se* pleadings be read "to raise the strongest arguments they suggest." *Bertin*, 478 F.3d at 491.[3]

---

[2] The Court notes that even if the diminution of her duties and concomitant loss of opportunity to obtain this promotion did not entail particular consequences for her wages and hours—which the Amended Complaint implies but does not explicitly state—it could still constitute an adverse employment action, as the Second Circuit has established that even where wages and benefits are not affected a transfer or change in duties can result in significantly diminished material responsibilities and therefore constitute an adverse employment action. *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

[3] While the Department of Social Services cites a number of cases to support its argument, including *Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 433 (S.D.N.Y. 2008), *Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96 (S.D.N.Y. 2012), and *Sangan v. Yale Univ.*, No. 06 CV 587, 2008 WL 350626, at *5 (D. Conn. Feb. 7, 2008), those cases each consider this issue at the summary judgment stage. *See, e.g.*, *Sangan*, 2008 WL 530626, at *5 (finding that "[t]he failure to offer any evidence which could qualify as an adverse employment action, except for her termination, foreclose a finding of discrimination in her employment" at the summary judgment stage).

The Department of Social Services's motion to dismiss Ms. Rainey's discrimination and retaliation claims for failure to state a claim therefore is denied.

### C. Hostile Work Environment

The Department of Social Services also argues that Ms. Rainey has not pled sufficient facts to establish a claim of hostile work environment. Def.'s Mem. at 13. The Court disagrees.

To establish a hostile work environment claim under Title VII or Connecticut's Fair Employment Practices Act ("CFEPA"), a plaintiff must show "that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Patino v. Birken Mfg. Co.*, 304 Conn. 679, 691 (2012) (noting, in CFEPA context, that the Connecticut Supreme Court "declared in *Brittell v. Department of Correction*, [247 Conn. 148, 166–67 (2012)], that to support a hostile work environment claim, the workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to *alter the conditions of the victim's employment* and create an abusive working environment") (internal quotation marks omitted). A plaintiff must show that the workplace is both objectively "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo*, 770 F.3d at 114. To be sufficiently severe or pervasive, the "incidents complained of 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted)).

In determining whether an environment is severe or pervasive, courts look to the totality of the circumstances. *Id.*; *see also Lyon v. Jones*, 260 F. Supp. 2d 507, 512 (D. Conn. 2003) ("In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances of the workplace and the alleged harassment, circumstances which may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'").

The Department of Social Services argues that Ms. Rainey "has neither pled a cause of action or any facts that could constitute a legal claim for a hostile work environment" because "[s]he has not identified incidents sufficiently severe or pervasive to constitute a hostile work environment, nor has she tied these incidents to her membership in a protected class, namely her race or color." Def.'s Mem. at 14–15. The Court disagrees.

Ms. Rainey alleges that she has been relocated "next to another employee who was known by management to be a severe problem employee." Am. Compl. ¶ 5(a). That employee, Ms. Rainey alleges, has referred to her (an African-American woman) as an animal and a savage. *Id.* ¶ 5(d). Despite her efforts to ameliorate the situation, Ms. Rainey alleges her employer has taken no action in response to her complaints and has instead suggested that if she wanted everything to stop she should drop the initial complaint she made against her co-worker. *Id.* ¶ 5(e). These allegations are sufficient to plead both an objectively and subjectively hostile work environment.

The Department's's motion to dismiss Ms. Rainey's hostile work environment claim therefore is denied.

### D. Sovereign Immunity

Finally, the Department of Social Services argues that Ms. Rainey's claims under Section 1983 must be dismissed because the "State is immune under the 11th Amendment from suit under 42 U.S.C. § 1983." Def.'s Mem. at 12. The Court agrees.

Section 1983 does not "override the traditional sovereign immunity of the States." *Quern v. Jordan*, 440 U.S. 332, 340–41 (1979). Thus, while Section 1983 permits lawsuits for the alleged violation of constitutional rights against some governmental entities and officials, neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As a result, "[i]n order to be subject to suit in federal court, a state must expressly and unambiguously waive its sovereign immunity, or Congress must clearly and unmistakably express its intention to abrogate the immunity in the language of the particular statute" and "Congress has not abrogated the state's immunity from suit under 42 U.S.C. §§ 1981 or 1983 . . . and Connecticut has not waived its sovereign immunity under those statutes[.]" *Wagner v. Conn. Dep't of Corr.*, 599 F. Supp. 2d 229, 237–38 (D. Conn. 2009) (citations omitted).

Ms. Rainey's claims against the Department of Social Services under Section 1983 therefore must be dismissed. *See id.* ("As a cause of action pursuant to 42 U.S.C. § 1983, Wagner's claims against the DOC and the individual defendants in their official capacity, except to the extent they seek prospective injunctive relief, are barred by the doctrine of sovereign immunity . . . .").

## IV. CONCLUSION

For the foregoing reasons, the Department of Social Services's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

The motion to dismiss is granted as to Ms. Rainey's Section 1983 claim against the Department, and denied as to all other claims.

SO ORDERED at Bridgeport, Connecticut, this 26th day of September, 2018.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge